ABEL BABCOCK *vs.* THE WESTERN RAIL ROAD CORPORATION.

A. granted to the Western Rail Road Corporation full and free license and authority to locate, construct, repair and forever maintain and use a rail road, upon, through and over his land, and to take his land therefor, to the extent authorized by their charter : The land was so situated that the embankment of the rail road would cause water to accumulate on the upper side thereof, and it became necessary to provide for the passage of water to the lower side : The corporation therefore made culverts, in suitable places, and in a convenient manner; but the situation of the land was such that it was necessary to connect ditches with the culverts, and extend the ditches, beyond the line of the location of the rail road, into the land of A., in order to prevent the water from setting back so as materially to injure the rail road or damage the land of A. *Held,* that the corporation were authorized by said license so to make said culverts and ditches, under the rule of law, that a grant of a thing includes the means necessary to attain it. *Held also,* that the corporation were authorized, by said license, to deepen and widen, in the land of A., beyond the line of the location of the rail road, the bed of a mountain stream, over which the rail road was laid out and constructed, to facilitate the discharge of the waters of the stream; such deepening and widening being necessary to secure the rail road from damage, or to prevent the land of A. from being broken and washed away. *It seems,* also, that the corporation had authority to do the aforesaid acts, under their charter and the Rev. Sts. *c.* 39.

TRESPASS for breaking and entering the plaintiff's closes in Chester, lying on each side of the defendants' rail road, and there cutting ditches, &c., and piling earth and stones on the plaintiff's soil adjacent to the track of said road. Trial before the chief justice, who made the following report thereof :

After the plaintiff's evidence was introduced, the defendants gave evidence tending to show that the land was so situated that the embankment for the rail road would cause the water to increase on one side, and that culverts were laid under the road, in three places, to carry it off. The jury were instructed, that if the land was so situated that some expedient was necessary to provide for the passage of the water from the upper to the lower side, and these culverts were laid in suitable places, and in a convenient manner, the defendants had authority so to make them ; and further, that if it was necessary to connect drains or ditches with these culverts, and if, by terminating them at the limits of the location of the rail road, the water would naturally dam up, or set back, so as materially to injure the rail road, or damage the land of the adjacent owner ; and if it was necessary to extend such ditches

beyond those limits, to avoid these consequences, the defend-
ants were authorized so to extend them into the land of the
adjacent proprietor.

There was evidence tending to show that the rail road
crossed a mountain torrent, near its outlet into a river ; that
the water frequently rushed down this stream with great vio-
lence, and in great quantity ; that the defendants had re-
moved rocks, and deepened and widened the bed of the tor-
rent, below the track of the rail road, to facilitate the discharge
of the stream into the river.    There was some conflict of evi-
dence, on the question whether the bed of the torrent, thus deep-
ened and widened, extended beyond the limits of the location
of the rail road, into the plaintiff's land ; but the evidence tend-
ed to show that it did.    Whereupon the jury were instructed,
that if it was necessary to widen and deepen the bed of this
mountain stream, in order to facilitate the discharge of its
waters into the river, and if this was necessary, to secure the
rail road from damage or to prevent the land of the adjacent
proprietor from being broken and washed away, then the de-
fendants had authority so to deepen and widen the bed of the
stream, beyond the limits of the location of the rail road.  The
jury were instructed that the defendants had this authority,
either under their act of incorporation, (*St.* 1833, *c.* 116,) or
under an agreement entered into between them and the plain-
tiff, which was given in evidence by the defendants, dated
October 20th 1836, and by which the plaintiff, for the con-
sideration therein mentioned, under his hand and seal, did
" grant, assign, transfer and convey to said rail road corpora-
tion, and for the use thereof, and their successors and assigns,
full and free license and authority to locate, construct, repair,
and forever maintain and use the said rail road, upon, through
and over my said lands, in such places and courses as the said
corporation may judge necessary and convenient, and to take
therefor my lands, to the extent authorized by their charter,"
&c.  (See 6 Met. 347.)

The jury were further instructed, that the defendants had
no right to enter upon the plaintiff's lands adjacent to the rail

road, for the purpose of obtaining materials, or piling up and depositing waste earth or stones, without a license from the plaintiff.

To the foregoing instructions, except the last, the plaintiff excepted ; and a verdict being returned for the defendants, the plaintiff moved that it should be set aside, and a new trial be granted. This motion was reserved for the consideration of the whole court.

*W. G. Bates & Davis,* for the plaintiff.

*R. A. Chapman,* for the defendants.

SHAW, C. J. Upon a review of the directions given to the ɹry, the court are of opinion that they were correct. They are founded on the obvious distinction between that which is necessarily incident to the prosecution of the work, and that which would only be convenient. Com. Dig. Grant, E. 11. Water can be drained off only in a particular direction, and by one method ; that is, by making a drain from the place where it accumulates to a lower level. It is a general rule, we think, that a grant of power to accomplish any particular enterprise, and especially one of a public nature, carries with it, so far as the grantor's own power extends, an authority to do all that is necessary to accomplish the principal object. The court are therefore strongly inclined to the opinion, that under the act of incorporation, passed March 15th 1833, (*St.* 1833, *c.* 116,) and the general laws respecting the establishing of rail roads, the corporation had the authority in question, independently of the plaintiff's deed. Rev. Sts. *c.* 39, §§ 45, 54, 56. Upon this principle, it has been decided that all persons — not merely those whose land is taken for laying the road, and for supplying materials, under §§ 54, 55, but, by § 56, all persons who may sustain damage occasioned by laying out, making or maintaining their road — shall have a remedy against the corporation. *Dodge* v. *County Commissioners,* 3 Met. 380. *Ashby* v. *Eastern Rail Road,* 5 Met. 371. The only ground ɔn which such damages could be allowed is, that they are authorized, because they are the natural and necessary conse- quence of the acts authorized to be done. But this must be

confined to that which is strictly necessary to accomplish the enterprise. When it is necessary to *take lands* of a greater width than five rods, for embankments, deep cuts, or the supply of materials, a license from the county commissioners is necessary. But such a taking ordinarily unfits the land for the uses of the owner, and is in its nature an appropriation ; but we cannot consider that laying a drain through or under land, to draw off water, is such taking or appropriation, or requires such license.

But whatever might have been the rights of the corporation, by their act of incorporation and the laws limiting and defining the powers and duties of rail road companies, the court are of opinion, that the power exercised by the defendants was granted by the plaintiff's own deed. It is a well known and reasonable rule, in construing a grant, that when any thing is granted, all the means to attain it, and all the fruits and effects of it, are granted also. *Cuicunque aliquid conceditur, conceditur etiam et id sine quo res ipsa non esse potuit.* By the grant of a ground is granted a way to it. Shep. Touch. 89. The plaintiff, by his deed executed before the acts done, and before the location of the road, granted to the corporation, their successors and assigns, full and free license and authority to locate, construct, repair, and forever maintain and use the said rail road, upon, through and over his said lands, &c. If the laying of the drains or ditches in question, through the plaintiff's land, or the deepening of the bed of the mountain torrent, in his land, *extra viam,* beyond the limits of the five rods, was necessary to the construction, or to the maintenance of the rail road, the authority so to do was granted by this deed, and the direction to the jury, to that effect, was right.

*Judgment on the verdict for the defendants.*